IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMGEN INC. and AMGEN MANUFACTURING, LIMITED,<br><br>   Plaintiffs,<br><br>   v.<br><br>HOSPIRA, INC.,<br><br>   Defendant. | C.A. No. 1:15-cv-00839-RGA |

**REPLY BRIEF IN SUPPORT OF AMGEN'S RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW OF INFRINGEMENT
OF THE '349 PATENT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

*Of Counsel*:
Kevin M. Flowers
Mark H. Izraelewicz
John R. Labbé
Julianne M. Hartzell
Benjamin T. Horton
Douglas G. Bolesch
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive
Chicago, Illinois 60606-6357
(312) 474-6300

Nicholas Groombridge
Eric Alan Stone
Jennifer H. Wu
Stephen A. Maniscalco
PAUL, WEISS, RIFKIND, WHARTON
 & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

Wendy A. Whiteford
Thomas F. Lavery IV
AMGEN INC.
One Amgen Center Drive
Thousand Oaks, CA 91320-1789
(805) 447-1000

Robert W. Whetzel (#2288)
Jason J. Rawnsley (#5379)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7634
whetzel@rlf.com
rawnsley@rlf.com

*Attorneys for Plaintiffs Amgen Inc.
and Amgen Manufacturing, Limited*

Dated: December 8, 2017

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. No reasonable jury could disregard Hospira's production-rate admission ..............2

    B. No reasonable jury could rely on Hospira's after-the-fact criticisms of its assays to disregard Hospira's production-rate admission .......................................3

    C. Hospira misled the jury with its argument that dot-blot evidence is "outside the fence" defining the scope of the '349 claims......................................6

III. CONCLUSION................................................................................................................ 8

i

I.      INTRODUCTION

Hospira and Amgen agree on two key facts, which require the grant of Amgen's JMOL motion: (1) Hospira told the FDA that its cells made at least 100 micrograms per milliliter of EPO per day; and (2) neither Hospira nor its expert disputed Dr. McLawhon's conversion of that production rate to the "U" of EPO required by the '349 claims.

Hospira focuses its arguments on the accuracy of its "dot-blot" assays. But it was Hospira's admission—its statement to the FDA about how much EPO its cells made —that established the cells were capable of producing EPO at the rates recited in the '349 claims. No reasonable jury could have ignored this admission, or Dr. McLawhon's undisputed conversion of micrograms of EPO to U of EPO, to conclude that Amgen failed to prove infringement.

Nevertheless, the jury failed to credit Hospira's admission because, during closing statements, Hospira's counsel made an inappropriate claim-construction argument: using the image of a fence to represent the scope of the claims, Hospira's counsel argued that any evidence relating to dot-blot assays fell "outside the fence"—that is, outside the scope of the claims.

The Court permitted this argument over Amgen's objection. But Hospira should not have been permitted to conflate an argument about the sufficiency of the evidence (direct or circumstantial) with an inappropriate argument about the scope of the claims. Hospira's tactic obfuscated the only real issue: whether Hospira's admitted production rate meant its cells were capable of making the required U of EPO. No reasonable jury could have disregarded Hospira's admission based on dot-blot assays, and Dr. McLawhon's conversion of that data to U of EPO, unless it erroneously believed that any evidence relating to dot-blot assays was outside the scope of the claims—that is, "outside the fence."

Accordingly, the Court should enter judgment as a matter of law that Hospira infringed the '349 claims, or grant a new trial on infringement.

1

**II.     ARGUMENT**

    **A.     No reasonable jury could disregard Hospira's production-rate admission**

The evidence established that Hospira's cells satisfied the EPO production-rate limitation in each of the '349 claims (the only limitations in dispute). In a report it submitted to the FDA as part of its BLA, Hospira told the FDA that its cells produced EPO "in the range of 100 µg or higher" per milliliter of cell-culture medium each day. (PTX-293 at 28 ("EPO concentration in supernatant estimated from dot blot analysis is in the range of 100 µg per ml or higher . . . ."); D.I. 329, Trial Tr. 525:8-17; 526:21-528:7.) Hospira does not deny that it admitted its cells produced 100 micrograms of EPO per milliliter per day. (Hosp. Opp. Br. at 7; D.I. 331, Trial Tr. 1213:1-1214:7.)

Based on this admission, Dr. McLawhon testified that Hospira infringed the production-rate limitations of the '349 claims, because 100 micrograms of EPO per milliliter per day represents 3,534 U of EPO per million cells in 48 hours, far more than the 100, 500, or 1000 Units recited in the '349 claims. (D.I. 329, Trial Tr. 536:5-14.) Hospira's expert, Dr. Hamilton, admitted the daily amount of EPO produced could be converted into "Units" of EPO to analyze the infringement issue, but unlike Dr. McLawhon, Hamilton failed to perform that conversion. (D.I. 331, Trial Tr. 1213:24-1214:16.)

Hospira ignores the effect of its admission on infringement. Instead, it attempts to walk-back that admission by arguing that the dot-blot assays to which that admission referred were less-accurate than an RIA. (Hosp. Opp. Br. at 8-9.) But Hospira's arguments and "evidence" criticizing the accuracy of its dot-blot assays are irrelevant to whether Hospira *admitted* its cells met the production-rate limitations in the '349 claims. Just as they did during trial, Hospira's current arguments about dot-blot assays only serve to confuse the issue.

2

### B. No reasonable jury could rely on Hospira's after-the-fact criticisms of its assays to disregard Hospira's production-rate admission

As noted above, the infringement analysis begins and ends with Hospira's production-rate admission to the FDA. Instead of addressing its admission, Hospira attacks the dot-blot assays that were used to generate the production-rate data that Hospira submitted to the FDA.

Hospira's equivocations about its dot-blot data are inconsistent with its representations to the FDA: none of these purported "flaws" prevented Hospira from telling the FDA that its cells produced "at least" 100 micrograms of EPO per milliliter per day. Hospira offered no evidence that it corrected or qualified these statements to the FDA. Hospira's after-the-fact testimony at trial about purported "flaws" in dot-blot assays is not substantial evidence that could support the jury's verdict of non-infringement. This testimony merely confused the issue in an attempt to discredit Hospira's then-unequivocal admission to the FDA.

*First*, Hospira argues that conversion of micrograms of EPO to "U" of EPO requires comparing a *purified* EPO sample to a *purified* EPO standard. (Hosp. Opp. Br. at 5-6, 8.) Hospira argues that "U of erythropoietin . . . as determined by radioimmunoassay" should be construed to exclude the result of comparing a *crude* EPO-containing "broth" to a *purified* EPO standard. (*Id.*) In addition to improperly seeking claim construction at this late stage, that construction of "U of erythropoietin. . . as determined by radioimmunoassay" is inconsistent with the written description in the '349 patent, in which Dr. Lin described using an RIA to assay crude "culture fluids," and converted the resulting data to "U" of EPO using a purified EPO standard. (D.I. 331, Trial Tr. 1211:10-1212:24; PTX-001 at 24:46-58; 27:56-67; 31:46-54.) Hospira performed its dot-blot assays in the same way, and Dr. McLawhon's conversion of Hospira's admitted production rate to "U" of EPO was therefore entirely proper. (D.I. 329, Trial Tr. 525:18-526:8, 536:2-14; D.I. 331, 1211:10-1212:24.)

Indeed, Hospira's production-rate admission was based on the dot-blot assays comparing a crude broth to a purified EPO standard called "BRP-EPO." (D.I. 331, Trial Tr. 1215:2-1216:2.) As can be seen in the figure below, which Hospira included in its report to the FDA, Hospira simply observed whether the intensity of the "dot" for a sample on a given day was darker or lighter than the dots for the purified EPO standards ranging from 5 µg/mL to 100 µg/mL EPO (in the red square at the bottom of the figure):

Figure 16. Epoetin Protein Production for Cell Lines CHOSI MEG151 and CHOSI MEG651 in 76 Day Perfusion Culture by Dot Blot Assessment of Culture Supernatants

BRP, Biological Reference Preparation

(DTX-131 at 43) (emphasis in red added). The "dots" under the heading "151" represent the daily production rate for Hospira's accused cells. As is readily apparent, most of those dots are darker than the dot for the 100 µg/mL standard, which is why Hospira told the FDA that its cells produced EPO "in the range of 100 µg or higher" each day. (PTX-293 at 28; D.I. 331, Trial Tr.

4

1192:5-1193:17.) Just as Hospira reached a firm conclusion about its cells' EPO production rate based on this data, no reasonable jury could have found Amgen failed to meet its burden on infringement simply because Hospira conducted its dot-blot assays on a "crude" sample.

*Second*, Hospira argues that its dot-blot assays may have been inaccurate because the cell-culture fluid (the "broth") it tested in those assays may have included EPO fragments that could have affected the results. (Hosp. Opp. Br. at 8-9.) But this argument misses the point: Dr. McLawhon was not relying on the dot-blot data itself to prove infringement: rather, he relied on Hospira's *admission* to the FDA that its cells were capable of producing enough EPO to satisfy the '349 claims. (D.I. 329, Trial Tr. 525:8-17.) No reasonable jury could have found that Amgen failed to meet its burden because Hospira's cell-culture fluid might have contained fragments.

*Third*, Hospira argues that its dot-blot assays may have been inaccurate because it did not use the same EPO standard or anti-EPO antibody/antiserum as Dr. Lin used in the examples in the '349 patent. (Hos. Opp. Br. at 1 and 8-9.) But neither this Court, nor any other court addressing the '349 claims, ever concluded that an assay measuring the capability of accused cells to produce EPO must use the same reagents or specific methods that Dr. Lin used in the early 1980s. Indeed, Hospira did not seek construction of "U of erythropoietin . . . as determined by radioimmunoassay," and certainly never suggested that the claims require one to use materials from the 1980s that are no longer available. (D.I. 59, Joint Claim Construction Statement at A-1.) Without such a claim construction (as Hospira argued to the jury in closing, over Amgen's objection), no reasonable jury could have concluded that Amgen failed to meet its burden.

Based on Hospira's admitted production rate, Dr. McLawhon testified that he converted Hospira's admitted production rate to "U" of EPO using the specific activity of the same EPO

5

standard that Hospira used in its dot-blot assays ("BRP EPO"). (D.I. 329, Trial Tr. 525:18-526:8.)

Dr. McLawhon concluded that Hospira's cells produced more than 3,500 U of EPO per million cells in a 48-hour period. (D.I. 329, Trial Tr. 525:8-536:14.) It is inconceivable that any of Hospira's after-the-fact criticisms of its own dot-blot assays could have led a reasonable jury to conclude that Hospira's cells were incapable of producing at least *100* U of EPO as required by Claim 1 of the '349 patent. Accordingly, this Court should grant Amgen's motion for JMOL on infringement of Claims 1-7 of the '349 patent.

### C. Hospira misled the jury with its argument that dot-blot evidence is "outside the fence" defining the scope of the '349 claims

During closing, Hospira's counsel told the jury that the '349 claims require results from an RIA, and that dot-blot assays fall outside the scope of the claims, such that evidence relating to Hospira's dot-blot assays could not be used to prove that Hospira infringed the EPO production-rate limitations: "The fence, there was nothing written up there in his opening, but we now know based on the evidence that what is inside the fence is 'as determined by RIA' . . . . *But outside the fence is dot blot*." (D.I. 332, Trial Tr. 1641:11-1642:6) (emphasis added.)

Hospira's attempt to run away from this claim-construction argument fails. Hospira characterizes this statement as "merely" pointing out that the claims literally recite "as determined by radioimmunoassay." (Hosp. Opp. Br. at 1-2, 9-10.) But it did more than that: it misled the jury to erroneously conclude that they should construe the claims to exclude the results from any assay other than a radioimmunoassay. Hospira cannot unring that bell.

Courts and commentators regularly analogize patent claims as akin to the metes and bounds of a real property deed, defining the outer boundaries as marked by a conceptual "fence." Craig Allen Nard, Certainty, Fence Building, and the Useful Arts, 74 IND. L.J. 759, 759 (1999)

6

("Patent law is about building fences. The demarcation of one's proprietary interest is facilitated by requiring the inventor . . . to point out distinctly and with particularity what he regards as his invention."); Dan L. Burk & Mark A. Lemley, Fence Posts or Sign Posts? Rethinking Patent Claim Construction, 157 U. PA. L. REV. 1743, 1744 (2009); Deep Varadarajn, Of Fences and Definite Patent Boundaries, 18 VAND. J. ENT. & TECH. L. 563 (2016).

Here, Hospira's use of the "fence" analogy was particularly egregious, because it referred back to Amgen's opening statement, in which the "fence" was said to define the literal scope of the '349 claims. (D.I. 332, Trial Tr. 1641:9-17.) In this context, the only reasonable conclusion is that the jury interpreted the claims to exclude the dot-blot assay data, just as Hospira encouraged.

In addition to being an improper and misleading analogy, Hospira's statement is also incorrect: the plain language of the '349 claims does not require evidence from the actual performance of an RIA. The '349 claims do not require any specific form of evidence, and certainly the "fence"—the scope of the claims—has nothing to do with the triable issue: whether Hospira's admission regarding how much EPO its cells made is sufficient proof that its cells were capable of producing at least 100 (or 500, or 1000) U of EPO per million cells in 48 hours.

The jury could only have concluded that Amgen failed to meet its burden on infringement if they accepted the premise of Hospira's argument: that only RIA evidence could serve to prove infringement, and thus that Hospira's admission about its cells' production rate, based on dot-blot assays, and Dr. McLawhon's conversion of that rate to U of EPO, were irrelevant.

Because Hospira's claim-construction argument during closing was improper, if the Court does not enter judgment as a matter of law that Hospira infringed the claims, the Court should grant a new trial on infringement.

7

## III. CONCLUSION

For the reasons set out herein and in Amgen's opening brief, Amgen respectfully requests that the Court enter judgment as a matter of law that Hospira infringed the '349 claims, or in the alternative, that the Court grant a new trial on infringement of the '349 claims.

|  |  |
|---|---|
| *Of Counsel*:<br>Kevin M. Flowers<br>Mark H. Izraelewicz<br>John R. Labbé<br>Julianne M. Hartzell<br>Benjamin T. Horton<br>Douglas G. Bolesch<br>MARSHALL, GERSTEIN & BORUN LLP<br>6300 Sears Tower<br>233 S. Wacker Drive<br>Chicago, Illinois 60606-6357<br>(312) 474-6300<br><br>Nicholas Groombridge<br>Eric Alan Stone<br>Jennifer H. Wu<br>Stephen A. Maniscalco<br>PAUL, WEISS, RIFKIND, WHARTON<br> & GARRISON LLP<br>1285 Avenue of the Americas<br>New York, New York 10019<br>(212) 373-3000<br><br>Wendy A. Whiteford<br>Thomas F. Lavery IV<br>AMGEN INC.<br>One Amgen Center Drive<br>Thousand Oaks, CA 91320-1789<br>(805) 447-1000<br><br>Dated: December 8, 2017 | /s/ *Jason J. Rawnsley*<br>Robert W. Whetzel (#2288)<br>Jason J. Rawnsley (#5379)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware 19801<br>(302) 651-7634<br>whetzel@rlf.com<br>rawnsley@rlf.com<br><br>*Attorneys for Plaintiffs Amgen Inc.*<br>*and Amgen Manufacturing, Limited* |