IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMGEN INC. and<br>AMGEN MANUFACTURING, LIMITED,<br>Plaintiff,<br><br>v.<br><br>HOSPIRA, INC.,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 15-839 (RGA) |

**REPLY DECLARATION OF RANDAL HEEB, PH.D. IN SUPPORT OF PLAINTIFFS AMGEN INC. AND AMGEN MANUFACTURING, LIMITED'S MOTION FOR PREJUDGMENT AND POSTJUDGMENT INTEREST**

I, Randal Heeb, hereby declare:

1. I am over the age of twenty-one (21), of sound mind, and competent to make this declaration. I am also qualified to give testimony under oath. Each of the facts listed below is within my personal knowledge and is true and correct.

2. On September 19, 2017, I testified as an expert witness on damages for Amgen Inc. and Amgen Manufacturing, Limited (collectively, "Amgen") in the above-captioned patent infringement litigation. The trial resulted in a verdict for Amgen on September 22, 2017 and a damages award of $70 million.

3. On October 23, 2017, I submitted a declaration in support of Amgen's Motion for Prejudgment and Post-judgment Interest in this matter ("Initial Declaration").

4. On November 20, 2017, Dr. Gregory Bell submitted a declaration ("Bell Declaration") in support of Hospira's motion regarding prejudgment interest. I have been asked by counsel for Amgen to respond to the Bell Declaration.

5. In his declaration, Dr. Bell questions whether Hospira's $70 million royalty payment would have been paid (a) as a lump-sum before Hospira's first infringement or (b) as $5 million

for each infringing batch when each batch was manufactured.[1] He also introduces two alternative interest rates to the prime rate I used in my Initial Declaration.[2] Dr. Bell then calculates prejudgment interest based on the "Manufacturing Date" for each batch rather than the "Thaw Date" I used in my Initial Declaration.[3] Nothing in Dr. Bell's declaration changes my view that the $70 million award would have been paid by Hospira as a lump sum before Hospira's first infringement. In my view, use of the prime rate to compute prejudgment interest would be appropriate and would not result in Amgen obtaining a "windfall."

6. If the Court were to find that the "Manufacturing Date" of the first infringing batch is the appropriate date from which to calculate prejudgment interest and not the "Thaw Date" of that batch, the prejudgment interest due to Amgen would decrease from $10,018,006 as reported in my Initial Declaration to $9,815,625, a decrease of $202,382 or 2%.[4]

7. There are three other technical differences in how Dr. Bell and I calculated Amgen's prejudgment interest. First, I did not begin compounding the interest from the fourth quarter of 2013 until the second quarter of 2014 to ensure that interest is not compounded more than quarterly. Dr. Bell's approach compounds the prejudgment interest earned by Amgen in the fourth quarter of 2013 starting in the first quarter of 2014. Second, Dr. Bell calculates 23 days of interest from December 9, 2013 (the Manufacturing Date of the first infringing batch) to December 31, 2013. This is incorrect, as it allows Amgen to collect interest on the first day of the period; assuming a December 9, 2013 start date, Amgen should only earn 22 days of interest. Third, Dr. Bell calculates interest in partial quarters using a formula that is appropriate when

---

[1] Bell Declaration, ¶¶5-6. This appears to be a new argument from what Dr. Bell and Hospira presented at trial when they argued Hospira would pay any royalty only when the product was sold, not manufactured.
[2] Bell Declaration, ¶¶7-8.
[3] Bell Declaration, ¶6.
[4] The difference does not tie out due to rounding.

computing interest over a full compounding period (or multiple periods) but is incorrect for computing interest in a partial period during which there is no compounding.

8. My approach to each of these three issues is either more conservative in the sense that it results in a slightly lower interest payment (in the case of compounding the first quarter's interest) or more accurate. Nevertheless, if I were to adopt Dr. Bell's approach as used in his Exhibit G to apply interest at the prime rate to a lump-sum royalty and change only the start date from Dr. Bell's Manufacturing Date of December 9, 2013 to the November 10, 2013 Thaw Date, the prejudgment interest due to Amgen would increase from $9,823,127 to $10,027,000, an increase of $203,872 or 2%.[5] In other words, the differences in our approaches have an almost insignificant impact on the prejudgment interest. These differences are summarized in the table below.

|  | Thaw Date (11/10/2013) | Manufacturing Date (12/9/2013) |
|---|---|---|
| My approach | $10,018,006[6] | $9,815,625 |
| Dr. Bell's approach | $10,027,000 | $9,823,127[7] |
| Difference[8] | $8,993 (0.09%) | $7,503 (0.08%) |

---

[5] The difference does not tie out due to rounding.
[6] As reported in ¶10 of my Initial Declaration.
[7] As reported in ¶10(c) of the Bell Declaration.
[8] The differences do not tie out due to rounding.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is a true and correct statement of facts known to me, methods used and opinions formed by me, and that this declaration was executed on December 8, 2017.

_____
Randal Heeb, PhD